# CORA G. LELAND v. MODERN SAMARITANS.[1]

June 3, 1910.

Nos. 16,558—(90).

**Insurance — waiver of default in payments — evidence.**

In an action upon a fraternal benefit certificate, it is *held* that the trial court properly granted a new trial for error in excluding evidence tending to show that defendant, by a long course of conduct in receiving payments of assessments from members, including decedent, at a time when by force of the by-laws they were in default and under suspension, waived a strict compliance with its regulations requiring prompt payments of dues and assessments. Mueller v. Grand Grove U. A. O. D., 69 Minn. 236, followed and applied. Elder v. Grand Lodge A. O. U. W., 79 Minn. 468, distinguished.

**Same — invalid articles.**

Certain provisions in defendant's constitution restricting the power and authority of the subordinate councils, the sole agencies through which it transacts its insurance business, *held* an attempt to disable itself from the power of future contract with its members, and invalid.

**Subsequent statute inapplicable.**

Section 21, p. 478, c. 345, Laws 1907, authorizing societies like defendant to include in their by-laws the restrictive provisions mentioned, having been enacted subsequent to the adoption of the by-laws here involved, and subsequent to the time when the rights of the parties to the action had in part accrued, has no application, and did not have the effect to give force to by-laws previously enacted by defendant.

Action in the district court for St. Louis county to recover $2,000 upon a benefit certificate. The answer alleged that up to March 1, 1908, plaintiff had complied with the terms of the agreement for insurance, but that he had failed to make the payment required in March, 1908, and thereby he had forfeited his rights thereunder. The reply alleged that it was the custom of defendant to permit without objection payment of dues at irregular intervals; that decedent paid his dues at irregular intervals and was led to rely and did

1Reported in 126 N. W. 728.

rely upon the belief that delay in such payments was permissible and did not affect his rights under the certificate, by reason of which defendant waived its right to prompt payment. The case was tried before Dibell, J., and a jury which rendered a verdict in favor of defendant. From an order granting plaintiff's motion for a new trial, defendant appealed. Affirmed.

*A. E. McManus*, for appellant.
*Alford & Hunt*, for respondent.

BROWN, J.

Defendant is a mutual benefit insurance association organized under the laws of this state, with its headquarters and principal place of business at Duluth. Its constitution provides for three distinct organizations, viz., the Imperial, Grand, and subordinate councils; the two latter owing allegiance to and the agencies through which the Imperial Council transacts its insurance business. Members become such and obtain their benefit certificates by joining the subordinate councils; the certificates being issued, and in the case of the death of members paid, by the Imperial Council. The Grand Council is clothed with authority to establish subordinate councils, and concurrently with the Imperial body with authority and supervision over the same. The association is supported and funds obtained for the payment of death claims by dues, per capita taxes, and assessments imposed upon and paid by the members; the amount due from each being fixed and determined by the laws of the order. The constitution, by-laws, rules, and regulations of the order are expressly made a part of each contract of insurance, and the members obligate themselves to a prompt and strict compliance therewith. By a failure to make payment of dues and assessments within the period prescribed the member so in default becomes ipso facto suspended, and forfeits all rights under his certificate of membership, unless subsequently reinstated in the manner permitted by the by-laws.

Plaintiff's husband, decedent, became a member of the order by joining the subordinate council at Duluth in July, 1897, and thereafter continued such, and in good standing, until the day of his

death, unless he forfeited all rights by reason of a failure to pay an assessment due a few days prior to his death. That assessment was due on March 1, and payable before the end of the month, and decedent died April 14 without having paid it.

In this action, brought upon decedent's certificate of membership, defendant pleaded in defense that decedent had forfeited all rights by his failure to make this payment. The facts are not disputed, and to avoid the default plaintiff set up in her reply to the answer, and sought on the trial to prove, a course of conduct on the part of the subordinate council and its officers in receiving from decedent and other members payment of dues and assessments after they were due, and when by force of the by-laws they stood suspended, which it is claimed constituted a waiver of strict compliance with the by-laws and estopped the association from insisting upon a forfeiture. The court excluded the evidence, and defendant had a verdict. The court thereafter, upon plaintiff's motion, granted a new trial on the ground that the ruling was error. Defendant appealed. The only question presented is whether the court erred in the respect stated.

1. The by-laws of the order provide in substance and effect that all assessments and dues shall be due on the first day of each month and payable to the financial scribe on or before the last day of each month, and, further, that any member who shall fail to pay his assessments or dues within the time so provided shall become suspended without action by the association, and that during the period of suspension the benefit certificate shall be "absolutely null and void." The members are required to make payments to the financial scribe of the subordinate council of which he is a member.

It appears without dispute in this case that at no time subsequent to January, 1906, did decedent pay the assessments due from him within the time prescribed by the by-laws. Subsequent to that date he uniformly paid his assessments quarterly, instead of monthly, and each payment was made at a time when he was from ten to fifteen days in default and under suspension. To illustrate: An assessment falling due the first of the month, and payable to avoid suspension before the end thereof, was not paid until some time in

111 M.—14.

the middle of the following month, when he would pay an amount sufficient to cover the assessment for the preceding, the present, and the month following. These payments were accepted without question, and, as stated, this custom and practice was uniform for the last two years of decedent's membership.

Proceeding upon the rule laid down in Mueller v. Grand Grove, U. A. O. D., 69 Minn. 236, 72 N. W. 48, plaintiff sought to prove that the subordinate council was cognizant of the custom, acquiesced therein, and in consequence the default was waived. It appeared in that case that the member had been permitted by the local grove to pay his assessments at irregular intervals without objection or suggestion that he had been or was liable to suspension, and the court, speaking through Mr. Justice Collins, held that the society could not, after long-continued conduct of this nature, by which the member was lulled into the conviction that his delay was unobjectionable and his good standing unaffected, suddenly and without notice insist that he was no longer in good standing and had forfeited all his rights and benefits under the contract. The decision in that case has not been departed from, and it controls the case at bar, unless the further point presently to be mentioned takes it out of the rule there laid down.

The case of Elder v. Grand Lodge, A. O. U. W., 79 Minn. 468, 82 N. W. 987, is not in point. In that case no attempt was made to show knowledge on the part of the local lodge of the habit of its secretary in receiving payments when members were in default; reliance being had upon the conduct of that officer alone. The same may be said of Graves v. Modern Woodmen of America, 85 Minn. 396, 89 N. W. 6, where the Elder case was followed.

2. But it is contended by defendant that when decedent made the payments at the time stated he had the lawful right under the by-laws to do so, and that the society had no option whether to accept or refuse the same, and therefore, whether the subordinate council had notice of the custom or not, there was no waiver of the rights of defendant. In this we are unable to concur.

By the constitution and by-laws of the society all members failing to make payment of assessments within the month for which they

are due stand suspended from all rights under their contracts. But those laws further provide that any member in good health may be reinstated by the payment of all arrears together with a penalty of twenty-five cents. The record before us contains no suggestion that the payments by decedent at the time and in the manner already stated were made for the purpose of becoming reinstated to good standing in the society, but rather to retain a standing which he then understood as entitling him to all his rights under the contract. There is no claim that he ever applied for reinstatement, and no claim that he ever produced evidence of his good health, or paid the penalty provided for the reinstatement of delinquent members. The conditions of good health and payment of the penalty of twenty five cents were as essential to reinstate under the laws as the payment of back assessments, and there is no suggestion that either was ever insisted upon. It does not therefore appear, as strongly urged by counsel, that decedent was entitled to reinstatement as a matter of strict right by the mere payment of overdue assessments within sixty days after default, the society having the right to be heard upon the question of good health and to insist upon the payment of the penalty, and if these conditions were waived, as the evidence tends to show, the case is practically identical, on principle, with the Mueller case.

3. But, eliminating from consideration the features of continued good health and the penalty, whether there was, by reason of the custom referred to, a waiver of the by-laws requiring prompt payment of dues and assessments, would, on evidence showing knowledge thereof by the subordinate council, or disclosing such a notorious or general delinquency on the part of members as to charge it with notice, present a question of fact for determination by the jury.

The precise question recently came before the supreme court of Wisconsin in the case of Reisz v. Supreme Council, 103 Wis. 427, 79 N. W. 430, where it was disposed of adversely to defendant's contention. In the course of the opinion the court said: "It is, of course, true that under the by-laws decedent had a right at any time within sixty days after a default, if suspended, to reinstate himself by paying the defaulted assessment and such others as,

though not due, had been called before default, and a mere payment and acceptance of money in accordance with that right would convey no necessary implication otherwise; but acceptance of overdue assessments without insisting, or even suggesting, that other acts were necessary for reinstatement, at least suggests an understanding that the transaction constituted a satisfaction of the original promise to pay, and that default did not exist. . * * * In the light of the above-mentioned evidence from defendant's officers, and the testimony of plaintiffs that throughout a long period such payments had been made and received from a few days to a month late, with no suggestion that anything more was necessary to set decedent right and protect his interests, the question of the intent and understanding of the parties was open to the jury, and they were justified in holding that such payments were made and received on the understanding that decedent thereby kept his standing, and not that it was necessary to regain it. From that he might reasonably infer that he was in the future to be accorded a reasonable credit upon his assessments before there should be deemed to be a default causing his suspension, and that the strict letter of his contract had been modified or waived to that extent."

The reasoning of the Wisconsin court is sound and in harmony with the principles of the law of waiver and estoppel as applied to contractual relations generally, and we apply it to the case at bar. Richwine v. La Crosse Mut. Aid Assn., 76 Minn. 417, 79 N. W. 504; Modern Woodmen v. Colman, 68 Neb. 660, 94 N. W. 814, 96 N. W. 154; Sweetser v. Odd Fellows, 117 Ind. 97, 19 N. E. 722; Trotter v. Grand Lodge, 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569; 2 Bacon, Benefit Societies, 433; Wallace v. Fraternal, 121 Mich. 263, 80 N. W. 6.

4. It is further contended that the provision of the by-laws to the effect that "no act of any subordinate council or any officer thereof" during the time a member is under suspension shall have "the effect to reinstate such member, nor waive nonpayment of assessments," except as expressly authorized, prevents a waiver on facts like those here presented, binding on the Imperial body. This contention is not sustained.

This provision of the by-laws is an attempt on the part of the Imperial Council to disable itself from future action with reference to delinquent members, even by mutual consent, and is invalid. The subordinate council is the agent of the Imperial Council, and as such is clothed with exclusive authority with reference to the admission of members, other than members at large, and with power and authority on the subject of their reinstatement when in default. It constitutes the agency through which the Imperial body collects assessments and dues from members, and it has sole charge, subject to constitutional regulations, of the affairs of the local council. In view of this situation, it is clear that the Imperial body could not in this manner impair its authority or capacity for future contract, express or implied, with its members. Lamberton v. Connecticut Fire Ins. Co., 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222; Anderson v. Manchester Fire Assurance Co., 59 Minn. 182, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. 400; Nichols & Shepard Co. v. Wiedemann, 72 Minn. 344, 75 N. W. 208, 76 N. W. 41; St. Paul F. & M. Ins. Co. v. Parsons, 47 Minn. 352, 50 N. W. 240; Michaud v. MacGregor, 61 Minn. 198, 63 N. W. 479.

The contention of counsel that these provisions were made valid and effectual by section 21, c. 345, p. 478, Laws 1907, is not sound. Whatever force or effect may be given that statute, it has no application to the case at bar. It does not appear that defendant has ever acted upon it. The by-law in question was a part of the laws of the society long before the enactment of the statute, and it could not be construed as intended to give force and effect to by-laws previously adopted by societies of the kind. Moreover, the rights of the parties to this action had become fixed prior to the passage of the statute, and it can be given no retroactive operation or effect. The custom of receiving overdue assessments from members had been established and acted upon by decedent before the statute came into existence, and rights accruing from that custom cannot thus be impaired or destroyed.

5. It has often been said in cases involving questions like those at bar that fraternal associations of this character should not be hampered or prevented in the strict enforcement of their by-laws

respecting the delinquency of members, and that they should have the right to insist upon a forfeiture when once clearly shown. We have no right or disposition even to deny this to such associations. Their by-laws are made for a specific purpose, and designed, not only for the protection of the association, but also for the protection of the members. Diligence in the enforcement of their rules and regulations is commendable and proper, and in harmony with the contract; but we are impressed with the idea that the diligence in this respect should precede, rather than follow, the death of a member, who, by a lax enforcement of the regulations, has been lulled into the belief that strict compliance is not necessary.

Order affirmed.