[No. 12355.    Department Two.    November 5, 1915.]

LEONOR FRANK, *Respondent*, v. SWITCHMEN'S UNION OF
NORTH AMERICA, *Appellant*.[1]

JUDGMENT—NON OBSTANTE—MOTION—TIME. A motion for judgment *non obstante veredicto* comes too late when not made until after the clerk's entry of judgment upon the verdict.

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS TO INSTRUCTIONS. Exceptions to instructions are sufficiently shown to have been called to the trial court's attention upon a motion for a new trial, where they were dated, filed and allowed by the court on the day before the motion was argued.

INSURANCE—FRATERNAL INSURANCE — CONTRACT — ESTOPPEL — ACCEPTANCE OF DUES. A fraternal beneficiary association is estopped to deny acceptance of an application and a contract for class B insurance, where from April, 1909, to October, 1911, it accepted dues upon that class of insurance, leading the applicant to believe that his application had been accepted, although a certificate had not been issued and in his application he waived any claim for insurance until his application had been acted upon by the head officers.

SAME—FRATERNAL INSURANCE—LOCAL AGENTS. The secretary of a local lodge, in accepting dues contrary to his instructions, acts as agent of the grand lodge, and his act is the act of his principal.

INSANE PERSONS—COMPETENCY—EVIDENCE—SUFFICIENCY. A finding that an inmate of an insane asylum had not recovered his reason while he was on parole is sustained by evidence that his mental condition prevented discussion with him and he was returned to and died in the asylum.

INSURANCE—FRATERNAL INSURANCE — CONTRACT — ESTOPPEL — ACCEPTANCE OF DUES—NOTICE. Where a fraternal beneficiary association had been accepting dues upon class B insurance for over two years, and did not discover or notify the member that he was not entitled to that class of insurance until the member had become insane, it is estopped to deny the contract, and waives provisions in its by-laws that no liability should attach until the application was accepted; and the unauthorized act of its local agent in collecting and forwarding the dues is ratified.

Appeal from a judgment of the superior court for King county, Humphries, J., entered June 4, 1914, upon the ver-

[1]Reported in 152 Pac. 512.

dict of a jury rendered in favor of the plaintiff, in an action upon a beneficiary certificate. Affirmed.

*Geo. A. Meagher* and *Ralph S. Pierce*, for appellant.

*Brightman, Halverstadt & Tennant*, for respondent.

MORRIS, C. J.—The respondent, Leonor Frank, the widow of Charles J. Frank, brought this action to recover $1,500, the amount of a class B benefit certificate, claimed by her to have been held by her husband in the Switchmen's Union of North America, at the time of his death. The appellant admitted a liability of $750 on a class A certificate, but denied any greater liability. A trial to the court and a jury resulted in judgment for the larger amount, from which judgment this appeal is taken.

Before taking up the appeal on the merits, we will dispose of two questions of procedure. The verdict was returned on March 16, 1914, and immediately entered by the clerk. On March 17, the appellant moved for judgment *non obstante*, which was denied. It has now become the settled law of this state that a motion for judgment *non obstante*, made after the entry of judgment on the verdict, comes too late. Objection is also made to our consideration of the instructions to the jury, for the reason that the exceptions were not called to the attention of the trial court upon the motion for new trial. The exceptions filed with the clerk bear the following indorsement: "The above exceptions were this day, and before the presentation of the motion for new trial, duly presented to the court and plaintiff, and said exceptions were thereupon allowed by the court." This was dated the day before the motion was argued, and signed by the court, and is sufficient to show that the trial court considered the exceptions in passing on the motion for a new trial.

The appellant is a fraternal beneficiary association, whose membership is made up of railroad yardmen. It is governed by what is known as the "lodge system," with a grand

lodge at Buffalo, New York, and subordinate lodges at various cities throughout the United States. Three classes of benefit certificates are issued to its members, in addition to the social membership privileges. Class A certificates are for $750, and class B certificates are for $1,500. Some time in January, 1908, Frank applied at Pueblo, Colorado, for membership in the order and a benefit certificate in class B. Upon the recommendation of the grand medical examiner, he was accepted in class A, and a certificate duly issued to him. This certificate was subsequently lost and was never replaced. In July, 1908, Frank became delinquent and was suspended. In October, 1908, he removed to Seattle, and in April, 1909, he applied for reinstatement and a class B certificate. His application and medical certificate were forwarded to the grand lodge, which rejected the application for a class B, but recommended that Frank be accepted for a class A certificate. This recommendation was duly received by the local lodge at Seattle, but through inadvertence the local secretary and treasurer accepted dues from Frank as a class B member until May 1, 1910, the dues for the period between January 1 and May 1 of that year, during the continuance of a strike, being paid by the local lodge. After May 1 the local lodge discontinued paying the dues of members on strike, and a large number of them, including Frank, were suspended for nonpayment. In September, 1910, the local lodge was notified by the grand lodge that all members in good standing on November 20, 1909, of whom Frank was one, could be reinstated upon re-examination and approval by the grand medical examiner. The local secretary and treasurer thereupon began to accept dues from Frank as previous to his suspension, and continued to do so until October, 1911, when he refused to accept for any except a class A certificate, although Mrs. Frank, or some one in her behalf, made regular tender of class B dues. The reason given by the local secretary was that he had been notified by

the grand lodge not to accept dues from Frank for any except a class A certificate.

In September, 1911, a month prior to this action by the local secretary, Frank, who had disappeared from Seattle several months previously, was located in Kansas City, seriously demented, and was removed to Seattle, where he was adjudged insane and committed to the hospital for the insane at Steilacoom. From May 14, 1912, to August 8, 1912, he was on parole from the hospital, and on the latter date was returned and remained until his death on Stepteneber 11, 1912. Upon proof of his death, the company tendered Mrs. Frank $750, the amount due on a class A policy. This tender was refused, and this action commenced for liability upon the basis of a class B policy.

No certificate for class B insurance was ever issued to Frank by the appellant, and if the verdict can be sustained, it must be on the ground that the appellant is estopped to deny that a contract for class B insurance existed. It becomes necessary, then, to determine whether the appellant by its conduct has estopped itself to deny the existence of such a contract. Great weight is attached by the appellant to the receipt issued to Frank at the time of his application in April, 1909, and the agreement he signed at that time waiving all "claim for insurance from the beneficiary department of the Switchmen's Union of North America until . . . my application has been received and acted upon by the [Grand Medical Examiner and Grand Secretary and Treasurer]." Mrs. Frank, at the trial, could not identify the signature as that of her husband; but conceding that the waiver was signed by him, the continued acceptance of dues, after a reasonable time in which the applications could be acted upon, would lead the applicant to believe that his application had been accepted, and would estop the appellant from denying that the application had been accepted and a contract entered into. The application was made in April, 1909, and dues were accepted from that time until October, 1911, a period of

over two years, except for the time between May 1 and September, 1910, when Frank was suspended. Clearly such conduct constitutes' an estoppel, if the acceptance of dues was binding on the grand lodge.

We pass, then, to a consideration of the effect of the act of Mr. Hayden, secretary of the local lodge, in accepting class B dues contrary to his instructions. Hayden, in accepting the dues, was the agent of the grand lodge, and any act on his part must be taken as the act of the appellant. *Richardson v. Brotherhood of Locomotive Firemen and Enginemen*, 70 Wash. 76, 126 Pac. 82, 41 L. R. A. (N. S.) 320; *Shultice v. Modern Woodmen of America*, 67 Wash. 65, 120 Pac. 531. Whatever orders Hayden had from the grand lodge, no notice was given Frank that he was not in good standing as a class B member prior to his suspension in May, 1910, nor for the time between his reinstatement in September, 1910, and October, 1911, when Mrs. Frank was told that he had no contract for class B insurance. Notice that Frank was not the holder of a class B certificate, in good standing, was first given Mrs. Frank in October, 1911, by Mr. Hayden. This action was taken by Hayden upon the receipt by him of a letter from Mr. Welch, the grand secretary-treasurer, in which Welch called Hayden's attention to the fact that no re-examination blank had been received for Frank for the reinstatement in September, 1910, and notifying Hayden that he had been remitting from September, 1910, to September, 1911, for Frank as a class B instead of a class A member. Hayden was directed to continue Frank as a class A member, and a check to refund the excess dues paid for the past year was inclosed for delivery to Frank. This letter was written on the day Welch learned of Frank's insanity. After its receipt, Hayden refused to accept dues from Frank as a class B member, and Mrs. Frank was notified of the action of the grand lodge. The appellant contends that Frank knew of his status at the time of his parole in May, 1912, and refused to take any action at that time, and that, because of this fact,

his consent to his rejection as a class B member and acceptance as a class A member must be inferred. Mrs. Frank, however, testified that she tried to discuss the matter with him, but his mental condition prevented. Frank's condition at that time was disputed and, the jury having found for the respondent, we must conclude that he had not recovered his reason.

The situation then resolves itself into this: Frank applied for class B membership and waived any benefits he would be entitled to thereunder until the application was approved. The application was never approved for that class, but the appellant, through Hayden, its agent, accepted dues from him until he became insane. The lodge then discovered that it had been carrying him at a greater benefit rate than he was entitled to, and refused to continue him as such. It would seem, in view of these facts, that the appellant is estopped to deny that a contract for class B insurance existed and that it had, by accepting dues from Frank, waived the provisions of its by-laws that no liability should attach until the application was accepted.

The appellant argues that, if a contract arose, it arose by virtue of Hayden's acts, and that the local lodge having no authority to create a contract for insurance with Frank, the grand lodge is not bound by Hayden's acts in excess of his power. We need not consider that argument, for it was shown on the trial that Hayden promptly remitted the dues collected by him from Frank, and always reported Frank as a class B member. The constitution and by-laws of appellant contained provisions for the audit of its subordinate lodge accounts which, properly followed, should have disclosed Frank's status. By its failure to notify Frank that he had not been accepted in class B, if the facts were known, and by continuing to accept from the local lodge his dues for a class B certificate, the appellant, as between it and Frank, ratified the acceptance of dues by Hayden, and by its own conduct is estopped to deny the existence of the con-

tract for a class B policy. If the facts were not known, its negligence in not discovering them would have the same effect. Even though Hayden's acts were *ultra vires,* they would, if ratified, bind the company, and such ratification is shown here.

The instructions excepted to by the appellant correctly stated the law applicable to the facts of this case. But, in addition to those instructions to the effect that full compliance with its by-laws might be waived by the company, and what could constitute such a waiver, the court instructed that there could be no recovery by the respondent unless the by-laws had been fully complied with, without again stating that a full compliance could be waived by the company. The latter instructions, although not excepted to, did not state the law correctly, but being favorable to the appellant, no error can be predicated thereon. While the instructions were conflicting, the appellant was not prejudiced thereby, and a new trial will not be ordered on that ground. *Tham v. Steeb Shipping Co.,* 39 Wash. 271, 81 Pac. 711.

The judgment is therefore affirmed.

MAIN, ELLIS, and FULLERTON, JJ., concur.