## HOME INS. CO. OF NEW YORK v. MOBLEY *et al.*

No. 6339.    Opinion Filed April 5, 1916.

Rehearing Denied May 16, 1916.

(157 Pac. 324.)

1. **INSURANCE—Agents—Authority.** Where a policy of fire insurance entered into by a foreign corporation is not valid until countersigned by the local agent, such agent will be held to be the officer having power to issue the same in view of section 3434, Rev. Laws 1910, even though the policy contained a provision providing that it should "not be valid until countersigned by the secretary or assistant secretary of the Western Farm Department at Chicago, Illinois."

2. **SAME—Forfeiture—Waiver.** Where an insurance company reinstates a policy which has been canceled, after knowledge of a breach of the policy prior to said reinstatement has been brought home to the local issuing agent, **held**, that the forfeiture is waived.

(Syllabus by Burford, C.)

*Error from District Court, Carter County;*
*Stillwell H. Russell, Judge.*

Action by Tennie Mobley and another against the Home Insurance Company of New York on a fire insurance policy. Judgment for plaintiffs and defendant brings error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*Johnson & McGill,* for defendants in error.

Opinion by BURFORD, C.   The plaintiffs (designated as in the court below) sued upon an insurance policy for loss by fire.  Defendant pleaded breaches of the policy: First, that plaintiffs were not fee-simple owners of the property insured; second, that after the policy was issued plaintiffs took out additional insurance; and, third, that after the policy was issued plaintiffs mortgaged the property. In reply plaintiffs pleaded notice of all these breaches to the defendant's agent, and waiver by conduct.

The grounds urged for reversal are:   First, that the testimony showed that R. O. Dulaney, the agent, who issued the policy, was only a "soliciting" and not an "issuing" agent, and that therefore notice of these defects to him was not notice to the company; second, that even if the view be taken that Dulaney was an "issuing" agent, he could waive the conditions of the policy only in the manner prescribed therein, to wit, in writing indorsed on or attached to the policy; and, third, that even if Dulaney were an "issuing" agent and might waive conditions arising at the time the policy was written and delivered, after the issuance of the policy the insured became bound by notice of the terms, which were that waiver could be made only in writing and by the secretary or assistant secretary at Chicago.

In relation to the breach alleged with regard to the title we think the question of waiver by the agent is immaterial.  The testimony tended to show that the owners of the lots upon which the building insured was built, desiring to get some buildings upon their town site as an advertisement and aid to the sale of other lots, had agreed

with plaintiffs that if they would build a good structure upon the lots in question, the owners would convey them to plaintiffs without cost; that plaintiffs had complied with their part of the bargain, and at the time the insurance was issued were entitled to a deed. There was no dispute between plaintiffs and the record owners of the lot. Plaintiffs were and had been in possession; the deed had just not been issued. Under such conditions the plaintiffs had title sufficient to support the statements of their application and to comply with the ownership provision of the insurance contract. *Arkansas Ins. Co. v. Cox,* 21 Okla. 873, 98 Pac. 552, 20 L. R. A. (N. S.) 775, 129 Am. St. Rep. 808; *Nance v. Oklahoma Fire Ins. Co.,* 31 Okla. 208, 120 Pac. 948, 38 L. R. A. (N. S.) 426; *Des Moines Ins. Co. v. Moon,* 33 Okla. 437, 439, 126 Pac. 753.

As to the second proposition, this court has always been careful to distinguish between the effect of the acts of mere soliciting agent—that is, an agent who has power only to solicit applications for insurance and forward them to some other officer by whom the policy is issued— and an "issuing" agent, who not only solicits the insurance, but accepts premiums and has power to determine the risk and issue the policy himself. The rule of *Western Nat. Ins. Co. v. Marsh,* 34 Okla. 414, 125 Pac. 1094, 42 L. R. A. (N. S.) 991, that an issuing agent may by his conduct bind his company to a waiver of conditions existing at the time the policy is issued in spite of a provision of the policy limiting his authority to waive conditions only in writing, has never by this court been extended to an agent whose only duty is to solicit, except as the soliciting agent acted strictly within the authority granted him. *Phipps v. Union Mut. Ins. Co.,* 50 Okla. 135, 150 Pac. 1083; *Modern Woodmen of America v. Weekley,* 42 Okla.

25, 139 Pac. 1138. It therefore becomes important to ascertain the authority of the agent, Dulaney. He testified that he had no "farm" policies—such as the one in question—in his possession, and always forwarded the application to Chicago for action thereon. The policy contained these provisions:

"In witness whereof the Home Insurance Company of New York has caused these presents to be signed by its president and attested by its secretary in the city of New York, but this policy or any indorsement thereon or attached thereto of any kind shall not be valid until countersigned by the secretary or the assistant secretary of the Western Farm Department at Chicago, Illinois, who alone shall have power or authority to waive or alter any of the terms or conditions of this policy, or to make or attach indorsements hereon."

Then follow the signatures of the president and secretary, and a place for the signature of the secretary of the Western Farm Department, and then appears the following:

"This policy is valid only when countersigned by R. O. Dulaney, agent at Cornish, Oklahoma."

In *Rochester German Ins. Co. v. Rodenhouse,* 36 Okla. 378-382, 128 Pac. 508, this court held that a provision similar to the sentence last quoted of itself constituted the person designated an issuing agent. Counsel for plaintiff in error attempt to avoid the effect of the decision by calling attention to the provision above quoted in regard to the required countersignature of the secretary, and urge that the provision distinguishes the policy under consideration from that in the Rodenhouse Case, *supra.* In our view the countersignature of the secretary is but an additional requirement, leaving the final act of issuance and

the final determination as to whether or not the policy shall issue and the delivery of the policy to the local agent. In the Rodenhouse Case the policy—an ordinary standard form—would not have been valid without the signatures of the president and secretary of the company, but it was the countersignature of the agent which was the final act necessary to its validity. So in the case at bar the company required the additional precaution of the countersignature of the secretary at Chicago, but the final act and the final discretion to be exercised was that of the local agent. We feel sure that if a fire had occurred in this case after the policy had been signed and forwarded by the secretary, but before it had been countersigned and delivered by the local agent, this company would be before us urging—and rightfully—that the policy had never become a completed contract. We hold, therefore, that the agent, Dulaney, was an "issuing" agent of the company, and that the trial court was right in assuming such a status of the agent as a matter of law. We are strengthened in this view by the fact that under this testimony the contract was necessarily entered into and the policy issued either by the assistant secretary at Chicago, or by Dulaney. No one else apparently had anything to do with it. The assistant secretary was located in Chicago, Ill. Dulaney lived in Cornish, Okla. The defendant company is a foreign corporation. We should construe this contract, if possible, so as to make its terms and the conduct of the company comply with the laws of this state, which provide (section 3434, Rev. Laws 1910):

"Foreign companies admitted to do business in this state shall make contracts of insurance upon lives, property, or interests herein, only through lawfully constituted and licensed resident agents. * * *"

In view of this we assume that the defendant company contracted through its resident agent, Dulaney.

This brings us to the consideration of the final question, involving part of both the second and third contentions above set out, to wit: If Dulaney be considered an issuing agent, still he could waive the provisions of the pol'cy only in writing, especially the breaches by reinsurance and mortgaging, which took place after the inception of the contract. This contention as to agents finds some support in the decisions of this court *(Sullivan v. Merc. Town Mut. Ins. Co.,* 20 Okla. 465, 94 Pac. 676, 129 Am. St. Rep. 761; *Des Moines Ins. Co. v. Moon,* 33 Okla. 442, 126 Pac. 753; *Merchants' & Planters' Ins. Co. v. Marsh,* 34 Okla. 458, 125 Pac. 1100, 42 L. R. A. [N. S.] 996), though as to adjusters the rule has been distinctly held to be otherwise *(Western Reciprocal Underwriters v. Coon,* 38 Okla. 453, 134 Pac. 22). This doctrine is based upon the theory, however, not that the knowledge of such an agent as Dulaney is not the knowledge of his principal, the insurance company, but that the act whereby the policy is relieved of its forfeiture—in other words, the waiver—based upon such knowledge can, under the provisions of the policy, be exercised by the agent only in a certa'n way, to wit, by written indorsement on or attached to the policy. These provisions as to written indorsements are set aside by the courts and oral waivers permitted at the inception of the policy, upon various grounds, probably the most frequent reason given being that at such time the insured does not have his pol'cy, does not know its conditions, and has no notice as to the limitations upon the power of the agent. *Des Moines Ins. Co. v. Moon, supra.* But the court has never, so far as we

have been able to find, gone so far as to say that as to an agent the provisions requiring the waiver to be made in a certain way may be set aside and an oral waiver permitted as to waivers alleged to have taken place after the execution and delivery of the policy. But the decision of that question is not necessary in this case. The considerations above set out are adverted to solely to show that the real basis of the doctrine as to oral waivers after the inception of the contract is not the effect of the knowledge, power, or authority of the agent, but the manner of his exercise of that power or authority. In the case at bar the policy sued upon had been canceled, and afterward "reinstated" after all the alleged breaches had accrued and after knowledge of them had been shown to have been brought home to the agent, Dulaney. This be'ng so, Dulaney being an issuing agent, his knowledge was that of his principal, and whether it be placed upon the ground that this reinstatement was in effect a new contract, at the inception of which Dulaney could make a waiver orally or by conduct, or whether we say that the reinstatement was necessarily the act of the company itself, and not the agent, and that having acted with knowledge, through the agent, of the mortgage and additional insurance, the principal itself waived the forfeiture, in either event the policy must be sustained. The trial court instructed upon the theory of waiver by the agent. Since it clearly appears that the policy was valid and the defendant could not in any event prevail, any error in the instruction would not justify a reversal.

Judgment affirmed.

By the Court: It is so ordered.