## NATIONAL COUNCIL OF KNIGHTS AND LADIES OF SECURITY v. FOWLER.

No. 8075—Opinion Filed Aug. 14, 1917.

Rehearing Denied Nov. 27, 1917.

(168 Pac. 914.)

**1. Trial—Directed Verdict—Evidence.**

A prima facie case having been admitted for plaintiff, it is not error for the trial court to refuse to direct a verdict for the defendant where the evidence in support of the affirmative defense relied upon does not prove the allegation of such defense to such a degree of certainty as to preclude reasonable men from differing thereon.

**2. Insurance—Fraternal Beneficial Associations—Waiver of Warranties—Authority of Local Council.**

A local council of mutual benefit society who by the provisions of the by-laws of the society has authority to issue and deliver the benefit certificate and collect assessments has authority to waive conditions and warranties of the insurance contract.

**3. Same.**

Where a local council of a mutual benefit society with authority to waive conditions and warranties of the contract of insurance receives dues from a member in payment of his assessment to the society, with full knowledge of the habits of the insured with reference to the use of intoxicating liquors, it thereby waives the conditions and warranties in the contract with reference to the use of such intoxicating liquors by the insured.

**4.—Same—Action on Certificate—Question for Jury—Waiver of Conditions.**

Where a local council of a mutual benefit society had authority to waive conditions and warranties in an insurance contract, held, it was not error for the trial court to submit the question as to whether or not the local council had waived said conditions and warranties to the jury, notwithstanding the court predicated the authority of the local council to waive said conditions and warranties upon the wrong section of the by-laws, especially where the result reached would have been the same.

(Syllabus by West, C.)

Error from District Court, Jackson County; Geo. C. Crump, Assigned Judge.

Suit by Malissie Fowler against the National Council of the Knights and Ladies of Security. Judgment for plaintiff, and defendant brings error. Affirmed.

W. C. Austin, for plaintiff in error.

Everett Petry and S. B. Garrett, for defendant in error.

Opinion by WEST, C. This is a suit instituted by the defendant in error, who will hereinafter be styled plaintiff, against plaintiff in error, who will hereinafter be styled defendant, in the district court of Jackson county, Okla., upon a beneficiary certificate of insurance issued by defendant to Dr. James E. Fowler, payable at his death to plaintiff, wife of the insured.

Briefly stated, plaintiff alleged that said certificate was issued in September, 1907, by the defendant, acting by its president, W. B. Kirkpatrick, and J. M. Wallace, its secretary, and Local Council No. 1518, Knights and Ladies of Security of Altus, Okla., through its president and secretary, respectively. Copy of the certificate was attached to and made a part of the petition. Petition pleaded full and complete compliance by the insured of all conditions in said contract, and, further, that if there was a violation of any part of the contract that the same had been waived. Defendant's answer admitted the issuance of said certificate, the death of the insured, and receipt of proof of death, and denied that Local Council No. 1518 of the National Council of Knights and Ladies of Security of Altus was a local branch of defendant, and denied the authority of said local council to waive any conditions in the contract, and alleged

that the insured had violated and forfeited his contract on account of certain false representations made in his application with reference to his use of intoxicating liquors and in the taking of a gold cure for same; and further, that after the issuance of such contract insured became addicted to the excessive use of intoxicating liquors, in violation of the contract, and that the excessive use of such intoxicating liquors was the proximate cause of his death.

Upon the trial defendant admitted a prima facie case, but attempted to prove the affirmative defense set out above. There are a number of assignments contained in defendant's petition in error which were treated by the defendant in his brief and argument collectively, and we will treat these assignments in the same manner under two propositions: First. Did the court err in refusing to instruct a verdict for the defendant? Second. Did the court err in submitting to the jury the issue raised as to the authority of the Local Council No. 1518, Knights and Ladies of Security of Altus, Okla., to waive certain conditions of the insurance contract, and this last question is raised both in the admission of evidence over the objection of defendant and in giving certain instructions excepted to by the defendant.

We will now consider the first proposition. Prima facie case having been admitted, and the defendant assuming the burden of proving an affirmative defense, was the evidence in the case such that only one logical conclusion could be drawn therefrom, or was it such that reasonable men might differ thereon? Applying this rule under the doctrine announced in case of National Council of Knights and Ladies of Security v. Lula Owens, 61 Okla. 256, 161 Pac. 178, second paragraph of the syllabus is as follows:

"The truth or falsity of warranties in an application for insurance, where there is a conflict in the evidence, is a question of fact for the jury."

There was a conflict in the testimony as to the truth of the statements made by the insured in his application for the policy and whether the insured had violated his contract after the issuance of the same, and the evidence as to whether or not the warranty contained in the application of the insured for the certificate in question was false in the sense that it would vitiate the contract and whether the insured had violated his contract after the issuance of the same was not such, in our opinion, that all reasonable men might draw the same conclusion therefrom.

The Supreme Court of the United States in case of Knickerbocker Life Insurance Co. v. Foley, 105 U. S. 350, 26 L. Ed. 1055, in dealing with a situation similar to the one presented here, makes use of the following language:

"When we speak of the habits of a person, we refer to his customary conduct, to pursue which he has acquired a tendency from frequent repetition of the same acts. It would be incorrect to say that a man has a habit of anything from a simple act. A habit of early rising, for example, could not be affirmed of one because he was once seen on the streets in the morning before the sun had risen, nor could intemperate habits be imputed to him because his appearance and actions on that occasion might indicate a night of excessive indulgence. The court did not, therefore, err in instructing the jury that if the habits of the insured, 'in the usual ordinary and every day routine of his life, were temperate,' the representations made are not untrue, within the meaning of the policy, although he may have had an attack of delirium tremens from an exceptional overindulgence, and could not have been contemplated from the language used in the policy that it should become void from an occasional excess by the insured, but only when such excess had by frequent repetitions become a habit, and the testimony of the witness, who had been intimate with him for years, and knew his general habits, must have satisfied the jury that, whatever excesses he may at times have committed, he was not habitually intemperate."

And so in this case the evidence tended to show that, whatever indulgence the insured had been guilty of, it was not of a very frequent occurrence, and that it was an exceptional thing for him to be seen intoxicated, and, further, no witness testified that they had ever seen the insured take a drink, and a number testified who met him frequently that they had never seen him drinking or under the influence of liquor. And, further, the evidence tended to show that the president and local secretary, its financier, and a large number of the members were acquainted with the habits of the insured in regard to his use of intoxicating liquors, and some of these had been for the whole time that the same had been used by the insured, and the evidence on all the issues raised by the affirmative defense conflicted; and in view of this state of the evidence, indulging every inference which might fairly support the verdict, we cannot say as a matter of law that the insured used intoxicating liquors to excess within the purview of the contract. This was not shown to such a degree of certainty as to preclude reasonable men from differing there-

on, and we hold that the court-did not err in refusing to instruct the jury to return a verdict for the defendant. Reed v. Scott, 50 Okla. 757, 151 Pac. 484, and cases cited thereunder.

The last proposition involved is as to whether or not the knowledge of the Local Council No. 1518, Knights and Ladies of Security of Altus, and its officers, as to the habits of the insured, and the extent of his use of intoxicating liquors, could be imputed to the National Council, and this involves the action of the court in the admission of testimony on the part of the plaintiff and his instructions to the jury on this phase of the case. In other words, if the theory of the plaintiff is correct that the knowledge of the local council could be imputed to the National Council, then the action of the trial court complained of was not erroneous, and, if it could not be, it was. Our court, in case of Modern Woodmen of America v. Weekley, 42 Okla. 25, 139 Pac. 1138, fourth paragraph of the. syllabus, lays down the following rule:

"The local agent of an insurance company who has authority to solicit, execute, and deliver policies for the company has authority to waive conditions of the contract of insurance, but a local agent with power only to solicit applications and forward them to the company, who issues and delivers the policies, has no such power."

And in announcing this rule the court followed the well considered cases of Western National Insurance Co. v. Marsh, 34 Okla. 414, 125 Pac. 1094, 42 L. R. A. (N. S.) 991, and Insurance Co. v. Little, 34 Okla. 449, 125 Pac. 1098.

Section 98, by-laws, p. 51, of defendant is as follows:

"When Certificate in Force.—The beneficiary certificate shall become effective and be in force from and after the initiation of the member and payment of one assessment and subordinate council dues to the financier, the certificate having been countersigned by the president and secretary of the subordinate council, dated, its seal affixed, and signed by the member and delivered to him."

It will be noted by the provisions of this section that it was necessary before the certificate becomes binding upon the company for the local council to countersign the same by its president and secretary, respectively, the same to be dated by the council, and the seal of the local council affixed thereto, and by such local council delivered to the insured. This provision is not found in many of the by-laws of other institutions of like character, and it is apparent to us

that under the rule announced in the cases of Home Ins. Co. of N. Y. v. Mobley, 57 Okla. 692, 157 Pac. 324, and Rochester German Insurance Co. of Rochester, N. Y., v. Rodenhouse, 36 Okla. 378, 128 Pac. 508, the Local Council No. 1518 is the issuing agent as much so as the National Council, and performs all the duties and functions that any resident agent performs for insurance companies in this jurisdiction. This authority is delegated to the local council for some purpose. After the application of the proposed beneficiary has been received by the National Council and passed upon favorably by it, the certificate is then returned to the local council, and under the section of the by-laws above quoted is required to be executed by the local council by its president and secretary, and the seal of the subordinate council attached, and by said subordinate council delivered to the insured. It evidently was the purpose of this section of the by-laws to allow the local council to have the last and final authority in passing upon the propriety and advisability of executing the contract, and if there was any reason not known to the National Council why said certificate should not be delivered which might be known to the local council by reason of its location at· or near the domicile of the proposed beneficiary, and the opportunity of its officers to know and be informed as to the character, habits, and fitness of the applicant to become a beneficiary, then it was within the power of the local council to refuse to countersign said certificate, and its failure so to do would under the section above referred to fail to give force and effect to such certificate. It was just as necessary for the local council to sign it as it was for the National Council to sign it.

In treating this subject Bacon Benefit Societies, Voluntary Associations (4th Ed.) in sections 187 and 188, uses the following language:

"The law of benefit societies is not fully settled, and many important questions are still to be determined in regard to the authority of the local lodges when acting as agents of the responsible corporation. For example, the courts must further consider to what extent knowledge of the local lodge is that of the superior; whether notice to the former binds the latter; and how far the principal is liable for the misfeasance or neglect of the agent Of course, the rule applies to these societies as to mutual insurance companies that the members are supposed to have knowledge of all limitations upon the powers of the lodge officers, or the lodge itself, contained in the charter and by-laws; but, as we shall see. the ten-

dency of the courts is to ignore whenever possible the differences between purely mutual and the ordinary stock companies. The probabilities are that future decisions will trace stronger resemblances between benefit societies and life insurance companies, and, as their methods of business become more alike, so it will be easier to apply the same rules to the contracts of both and emphasize the distinctions because of difference in the methods of doing business. The society and regular company alike issue certificates or policies which are sent to the local agent, or lodge, who countersigns and delivers them, and afterwards collects and remits the assessments or premiums. Though the society has a fraternal and charitable feature that the company has not, the principal business of both is the sale of life insurance for a consideration. The reasonable inference is that the same principles of agency determine in each case the liability of the principal for the acts of the agent.

"Sec. 188. Same Subject Continued.—It is difficult, if not impossible, to deduce from the opinions of the court in the numerous cases where the subject has been considered a general rule. It will be sufficient, however, to give a few extracts from cases bearing on the subject. In the case of Rasicot v. Royal Neighbors of America the court said: 'The local camp of which the insured was a member collected and received the dues and assessments from its members, and was charged with the duty of looking after the health and conduct of its members and of expelling or suspending its members for any violation of the laws of the order or breach of their duties as members of the society. The local lodge was therefore the agent of the society which issued the benefit certificate, and the appellant, after the lapse of more than four years, is chargeable with notice of the existence of the condition on the part of the insured which would have avoided the risk and prevented the contract from becoming effective and operative. Under these facts and circumstances the doctrine of waiver should be applied to the society.' In Supreme Lodge, K. of H., v. Davis, the court said: 'In the mutual benevolent order composed of a Supreme Lodge and subordinate lodges, an officer of a subordinate lodge charged with the duty of notifying the members of assessments made by the Supreme Lodge for the purpose of paying insurance certificates of deceased members, and of collecting and forwarding to the Supreme Lodge such assessments, is an agent of the Supreme Lodge, notwithstanding a rule or by-law of the order recites that such officer in collecting and forwarding assessments shall be the agent of the members of the subordinate lodge, and the Supreme Lodge is charged with all knowledge possessed by the agent in making the collection.' In Trotter v. Grand Lodge Legion of Honor the court

said: 'The rule that courts will give effect to any act or circumstance from which it may fairly be argued that the insurer has waived the right to strict and literal performance by the insured, or upon which an estoppel against forfeiture may be founded applies to fraternal or lodge insurance. And whether a waiver of forfeiture of a certificate of insurance will be found in any particular case depends, not on the intention of the insurer, against whom it is asserted, but on the effect which its conduct or course of business has had upon the insured, and this rule is applicable where the insurer acts under a mistake.' In Pringle v. Modern Woodmen of America Pringle held a benefit certificate which contained a clause to the effect that it should become null and void if the insured should at any time be convicted of a felony. While holding the certificate, the insured was convicted of felony and sentenced to the state penitentiary, where he was confined for about six months, and died. The beneficiary sued on the contract to recover the amount of the policy. It appeared that the insured had continuously kept up the payment of his dues and assessments. The Supreme Court of Nebraska, in speaking through Mr. Justice Barnes, said: 'The local camp and its clerk being the agents of the association, the conclusive presumption, in the absence of fraud, is that they seasonably communicated the fact of Pringle's conviction to the Head Camp. Indeed, the clerk testified that the governing body knew of the fact, and his statement stands unchallenged, except by the evidence of one C. W. Hawes, the head clerk of the association. A like state of facts has often been held to amount to waiver of a similar forfeiture clause.'

" 'The state is vitally interested in the thrift and frugality of its citizens, and in encouraging the citizen in providing for his family and looking to their protection and comfort in the event of his demise. To allow him, when acting honestly and from the most laudable motive, to be led on under the belief that he is devoting his savings to the purchase of a legacy for his dependent ones, and then, when the beneficiary comes to make demand for that paltry recompense, to tell him that the court, the final arbiters of his rights, will not listen to the equity of the case, would be doing violence to the principles of fair dealing, and would be likewise contrary to the best interests of the public at large, which we term "public policy." Had the insured been in any manner advised that her policy was not in force, she would perhaps have procured one that would have been valid, and this would have been to the benefit of her family and in the interest of society as well, and the state itself must feel an interest in having her take such precautions, and in that sense the construction of such contracts becomes a matter of public policy. The insurer

cannot suffer half so much from such a policy and such construction as the individuals interested, and society at large must in the end of necessity suffer from the cold-blooded, technical rule that seems to prevail in so many jurisdictions. This ought to be the rule in order to prevent organizations soliciting membership, receiving insurance applications, and accepting dues and assessments for years, and then, after the applicant is perhaps too old to procure insurance elsewhere tell the insured that he made a false answer in some one of the numerous questions propounded by the society, and that consequently his policy has never been in force. Such a contract is clearly violative of the interest of society at large and of the welfare of its citizens, and ought to be discouraged.'

"Many other cases substantially support this view. Frank v. Switchmen's Union, 87 Wash. 634, 152 Pac. 512; Crumley v. Sovereign Camp, W. O. W., 102 S. C. 386, 86 S. E. 954; Knights of the Maccabees of the World v. Pelton, 21 Colo. App. 185, 121 Pac. 949; Collver v. M. W. A., 154 Iowa, 615, 135 N. W. 67; Johanson v. Grand Lodge A. O. U. W., 31 Utah, 45, 86 Pac. 494; Shultice v. M. W. A., 67 Wash. 65, 120 Pac. 531; Henton v. Sovereign Camp, Woodmen of the World, 87 Neb. 552, 127 N. W. 869, 138 Am. St. Rep. 500; Jones v. Supreme Lodge, Knights of Honor, 236 Ill. 113, 86 N. E. 191, 127 Am. St. Rep. 277; Thomas v. Modern Brotherhood of America, 25 S. D. 632, 127 N. W. 572; Leland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728; Patton v. Women of Woodcraft, 65 Or. 33, 131 Pac. 521; Independent Order of Foresters v. Cunningham, 127 Tenn. 521, 156 S. W. 192; Gilmore v. Modern Protective Ass'n, 171 Ill. App. 525; Kelly v. Ancient Order of Hibernians' Insurance Fund, 113 Minn. 355, 129 N. W. 846; Supreme Lodge, United Benev. Ass'n, v. Lawson (Tex. Civ. App.) 133 S. W. 907; Grand Temple, etc., v. Johnson (Tex. Civ. App.) 171 S. W. 491; Hendrickson v. Grand Lodge, A. O. U. W., 120 Minn. 36, 138 N. W. 946; Mosaic Templars of America v. Jones, 99 Ark. 204, 137 S. W. 812."

And so it is our opinion that the weight and reason of authorities is to the effect that, under the circumstances in this case, knowledge of such local council would be knowledge to the National Council, and the court in admitting evidence of the knowledge of local council and its officers as to the habits of the insured with reference to the use of intoxicating liquors could not be complained of, and if the said local council, with the knowledge of the habits of insured, continued to receive his dues in payment of his insurance, said conditions and warranty in the contract with reference to the use of intoxicating liquors would be waived, and there would

be no error predicated on section 9 of the court's charge, which fairly states the law in this respect, and which is as follows:

"You are further instructed that, inasmuch as the defendant is an association, of which the deceased was a member, could receive from the insured premiums in payment for the benefits mentioned in said policy sued upon herein, and if said premiums were received by the defendant with full knowledge of its subordinate lodge, that the deceased had violated certain conditions in said policy, said conditions were waived, and the defendant would be required to pay the amount of its promise mentioned in said policy."

Section 15 of the court's charge is as follows:

"A subordinate lodge of a mutual benefit association, which has the power to discipline or expel a member for violating the by-laws and constitution of the association, possess such knowledge, that a member has forfeited his benefit certificate by violating the by-laws of an association, waives the right of the association to insist upon the forfeiture by continuing to receive his dues, and otherwise treating him as member. And in this connection you are instructed that, if you find that local council of the defendant association, acting by its officers and agents, had knowledge of the habits of life of the insured, James E. Fowler, with reference to the use of alcoholic liquors, and knew that he had thereby forfeited his right to the benefit certificate sued on, and said local lodge had power and authority to discipline or expel a member for such cause, and said local lodge then continued to treat the insured as a member of said association and continued to accept his dues as such member, then it has waived the right of the association to claim a forfeiture of his benefit certificate, and your verdict should be for the plaintiff."

Section 174 of the by-laws of defendant is as follows:—

"National Executive Committee and Subordinate Council to Have Concurrent Jurisdiction.—In any case where charges are preferred against a member of the order as provided in the laws of the order, the subordinate council and the National Executive Committee shall have original concurrent jurisdiction to hear and determine all matters of complaint."

Section 171 of the by-laws of defendant in part is as follows:

"Sec. 171. Offenses Specified.—The following shall be recognized, among other things, as distinct offenses against this order. * * *

"4. Intemperate use of intoxicating liquors, drugs or narcotics, or visiting a council while intoxicated."

Section 173 of the by-laws of defendant is as follows:

"Sec. 173. Penalties. — The following shall be the penalties which may be inflicted upon members found guilty of any of the foregoing charges, and the vote shall be taken upon said penalties (if the member has first been found guilty) in the order as set forth below:

"First. Expulsion.

"Second. Suspension for definite period.

"Third. Reprimand."

"Sec. 190. The Effect of Suspension of is as follows—

"Sec. 190. The Effect of Suspension of Expulsion.—The effect of expulsion or suspension for more than three months shall include among other things the cancellation of the beneficiary certificate held by such member."

It will be noted that it was within the power of the local council to discipline its members, and one of the grounds upon which a member might be expelled or suspended was the intemperate use of intoxicating liquors, and the infliction of such penalty carried with it ipso facto the cancellation of the beneficiary certificate.

The trial court predicated the authority of the local council to waive the right of the National Council to insist upon forfeiture of the contract in question on the ground that said council had authority to discipline or expel a member who violated the by-laws and constitution of the association, when in fact this authority should have been predicated, as we think, upon the authority of the local council as the issuing agent of the defendant. However, it is our opinion that, whichever way the question might have been submitted to the jury, the result would have been the same, and we think that the last part of the above paragraph of the court's charge correctly states the law of this case, and the action of the court in placing the right of the plaintiff to claim a waiver on the part of the National Council by reason of the acts of the local council on the wrong section of by-laws when the result reached would have been the same could not be complained of.

Finding no prejudicial error, the case is affirmed.

By the Court: It is so ordered.