## GERTIE HENDRICKSON v. GRAND LODGE A. O. U. W.

December 13, 1912.

Nos. 17,935—(94).

**Fraternal insurance order — knowledge of officer.**

An officer of a fraternal insurance order represents such order in the performance of the duties of his office, so that his knowledge and action in reference to a matter within the scope of such duties, in the absence of fraud, may be considered as the knowledge and action of the order.

**Prohibited occupation — waiver of forfeiture.**

A by-law of the defendant, a fraternal insurance company, provided that if a member should enter into the business or occupation of selling at retail intoxicating liquors as a beverage his membership should cease, and the insurance certificate and all rights thereunder should become forfeited. Plaintiff's husband, a common laborer, while a member, accepted work in a village saloon as a temporary substitute for the bartender for five or six weeks, during which time he paid an assessment that came due on the membership certificate. This assessment was accepted and retained by the officers of the local lodge. Three days after the insured quit the said temporary employment he died. After his death, and with knowledge of his said employment, defendant's grand recorder requested further proof, not

---

1 Reported in 139 N. W. 946.

Note.—On the question whether a breach of an insurance policy which *ipso facto* terminates it may be waived, see note in 25 L.R.A.(N.S.) 78.

As to waiver by subordinate lodge of right of benefit association to insist upon forfeiture of benefit because of violation of laws of association, see note in 10 L.R.A.(N.S.) 136.

For waiver of provision as to change of occupation by continued receipt of dues, see note in 27 L.R.A.(N.S.) 446.

only as to his occupation, but as to burial. Assuming that the temporary employment forfeited the insurance, it is *held* that the trial court's finding that there was a waiver of the forfeiture is sustained by the evidence.

Action in the district court for Wright county against the Grand Lodge of the Ancient Order of United Workmen to recover $2,000 on defendant's benefit certificate. The defense set up in the answer and the substance of the reply are to be found in the second paragraph of the opinion. The case was tried before Giddings, J., who made findings and as conclusion of law ordered judgment in favor of plaintiff for the amount demanded. From the judgment entered pursuant to the findings, defendant appealed. Affirmed.

*William B. Anderson,* for appellant.

*Woolley & Johnson,* for respondent.

HOLT, J.

The defendant is a so-called fraternal insurance association, and plaintiff sues to recover on the policy or membership certificate of insurance issued by defendant to her deceased husband, whereby defendant, in case of his death, agreed to pay her $2,000. The case was tried to the court, and findings made directing judgment in favor of plaintiff. From the judgment thereupon entered, defendant appeals.

The defense was that plaintiff's husband, the insured, had entered a prohibited occupation—that of selling intoxicating liquors at retail—which ipso facto annulled the insurance contract. Plaintiff pleaded in reply, and the court found, that defendant waived the forfeiture by accepting and retaining an assessment on the policy with knowledge that the insured was engaged in the prohibited occupation, and also that after the death of the insured, and after being informed that he had been so employed, defendant again waived the forfeiture by requesting plaintiff to furnish additional proof of death, which she did, at some expense and trouble.

The defendant challenges the waiver found, and the consequent conclusion of law that the policy sued on is a subsisting contract, entitling plaintiff to judgment.

It is by no means clear that a forfeiture ever occurred in this case. Section 98 of the by-laws of the order enacts that any member "who shall hereafter enter into the business or occupation of selling, by retail, intoxicating liquors as a beverage shall, by his so entering into such business or occupation, alone and without any action" by the grand or local lodge, or any officer of either, stand suspended, and, from and including the day upon which he so enters into such business or occupation, his beneficiary certificate shall be void, and all rights thereunder shall be forfeited. This provision is viewed somewhat differently than one which does not undertake to absolutely abrogate the policy. For instance, stipulations are found in some insurance contracts which declare that, if the insured should enter a more hazardous occupation, a loss directly traceable thereto is not covered by the policy, and in other policies it reduces the recovery. This distinction appears in the two cases of Abell v. Modern Woodmen of America, 96 Minn. 494, 105 N. W. 65, 906, and Johnson v. Modern Brotherhood of America, 109 Minn. 288, 123 N. W. 819, 27 L.R.A.(N.S.) 446. Entering into the prohibited calling does not merely suspend, or modify, but absolutely annuls, the insurance here in question.

If there be any uncertainty in the wording of a contract which attempts such dire consequences to the insured, courts construe it so as to avoid a forfeiture.

One definition given by the lexicographers of the word "occupation" is: "That to which one's time and attention are habitually devoted." The court found that the insured was a common laborer, who for five or six weeks prior to his last illness had found temporary employment to tend bar in a saloon while the regular bartender went out to operate a threshing engine. Whenever the latter returned, the insured was to quit. The bartender returned, and the insured left the employment the day before he was taken ill. No claim is made that his illness or death two days thereafter was in any measure due to his previous employment in the saloon. There are those whose regular employment is that of selling intoxicating drinks at retail for others, ordinarily called bartenders, and probably it is a fair construction of the by-law referred to to say that it was intended to ex-

clude bartenders, as well as saloon keepers, from membership in the order. But it will hardly be claimed that every member of the order who might enter upon the sale of intoxicating drinks for however short a period, or under every circumstance, is thereby ipso facto expelled. In some of the restaurants and cafés of our large cities a waiter sells and serves more intoxicating drinks in a day than would some temporary bartender in a village saloon in a week, and yet we doubt whether this order, or any court, would say that such waiter, by reason of his employment, could not retain his membership, if he had one. The by-law does not use the expression "employed in or assisting in the sale," which might have been expected if the intention was to exclude from membership others than those who, as saloon keepers, engaged in selling intoxicating drinks. So that it may be contended, and with reason, that it is not clear that one who temporarily acts as a substitute for a bartender does, within the meaning of this by-law, enter into the business or occupation of selling at retail intoxicating liquors as a beverage.

Courts rightly construe the language of an insurance contract of even a fraternal organization most favorably to the insured, when the writing is susceptible of two constructions, one of which results in a forfeiture, and the other in the enforcement of the policy. Finch v. Grand Grove U. A. O. D. 60 Minn. 308, 62 N. W. 384. And this principle is again announced and exemplified in the facts upon which the decision in Cook v. Modern Brotherhood of America, 114 Minn. 299, 131 N. W. 334, is based.

We shall not, however, place our decision of this case upon the ground that the work which the deceased took up temporarily in the saloon was not a violation of defendant's by-law which forfeited his membership, because no claim was made by plaintiff in this case that the insured's occupation was not prohibited. What has been said above as to the doubtful effect of the insured's employment may be sufficient to indicate that neither he nor any one of those who acted for defendant with knowledge of the true situation is to be charged with an attempt to defraud, either in the payment or acceptance of the assessment. We then come to the evidence, viewed in the light

of legal principles, to see if the trial court was warranted in predicating a waiver of the forfeiture set up as a defense.

It is settled law that forfeiture of an insurance policy or contract may be waived. Mee v. Bankers Life Assn. 69 Minn. 210, 72 N. W. 74, and cases there cited. And this is so, notwithstanding provisions to the contrary in the contract, as in the case here. Andrus v. Maryland Casualty Co. 91 Minn. 358, 98 N. W. 200. Waiver is defined as an intentional relinquishment of a known right. Therefore there can be no waiver here, unless knowledge that the insured had entered upon the prohibited occupation was brought home to defendant, or to those who, in a legal sense, represent it, and, possessing such knowledge, an act was done, or a position assumed, which indicates an intention to consider the contract of insurance as still in force. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 7 An. Cas. 1144.

The defendant is a corporation, and hence must of necessity act through officers or agents. That the local lodge is agent of defendant, in the matter of collecting and remitting assessments, so that if such lodge knew of the work the insured was engaged in, and, so knowing, received and remitted the September assessment, waiver would have resulted, cannot be successfully controverted. Leland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728. We do not, however, regard knowledge or inaction of some, or even a majority, perhaps, of the members of the local lodge as important, or such as would affect defendant, inasmuch as no duty to enforce discipline or collect assessments is imposed on the individual members. But the local lodge, to the knowledge of defendant, acts through its officers, so that such lodge, and through it defendant, may be bound by the knowledge and conduct of such officers acting in the discharge of their duties.

The defendant relies on Graves v. Modern Woodmen of America, 85 Minn. 396, 89 N. W. 6, for the rule that an officer of a local lodge cannot, by any act of his, waive a right of the grand lodge. When that decision, as well as that of Elder v. Grand Lodge A. O. U. W. 79 Minn. 468, 82 N. W. 987, also cited, is examined in the light of the facts therein, we do not think there is any departure from the

principle that an agent, when acting within the scope of his employment, in the absence of fraud, represents his principal, so that the knowledge and doings of the agent conclude the principal.     In neither the Graves nor the Elder case had the agent acted on the matter which caused the forfeiture.   The dues or assessments were in default, and the attempt was made to show that the condition in the insurance contract which provided for forfeiture on default had been waived by the conduct of the collecting officer of the local lodge in receiving assessments after default on previous occasions.   But the facts also established that the lodge never recognized such a custom, but, on the contrary, insisted on prompt payment.   The officer's violation of his instruction, not known to or recognized by the lodge, was held not to be a waiver of the condition of the policy as to future assessments.   The officer had no authority to establish a custom for the lodge as to when future payment should be made; but, as to an act required of an officer of a local lodge in its behalf, it should shoulder the consequences.

In this case the only one ordained to receive the assessments was the financier, and the master workman was the officer whose duty it was to take care that payment of the sums collected was promptly remitted to the grand lodge.   It would seem that these officers, in accepting the assessments from the insured and remitting to defendant, are not mere machines, but do their work with reference to the rights and duties, not only of the members, but of defendant and the local lodge, to which they report in detail; and knowledge obtained in the performance of these duties is the knowledge of the local lodge and defendant.

To hold otherwise would be to relieve the officers and agents of an association like defendant, and defendant also, of all responsibility, and throw it on its members.   The officers of the local lodge are elected by the members because of confidence in their ability and integrity to represent the lodge and act for it in the discharge of their several duties.   Such is the holding of the courts in Pringle v. Modern Woodmen of America, 76 Neb. 384, 107 N. W. 756, 113 N. W. 231, Collver v. Modern Woodmen of America (Iowa) 135 N. W. 67, Supreme Court of Honor v. Sullivan, 26 Ind. App. 60, 59 N.

E. 37, and the cases referred to therein. This rule appears to us more conducive to just results than the one apparently adopted in Brown v. Great Camp K. M. M. 167 Mich. 123, 132 N. W. 562.

The financier of the local lodge of the insured in the case at bar was charged with the duty of collecting and remitting to defendant the assessments against members. In the middle of September, 1910, when the insured was employed, as stated, in a saloon, he paid the last assessment (none other came due prior to his death). Owing to a change previously made by him in the amount of insurance and beneficiary, the financier could not then determine the exact amount, but received more than sufficient to cover it, and returned the surplus, together with a proper receipt, to the insured October 4, 1910.

The insured resided, as did also the financier and master workman of the local lodge, at Hancock, Minnesota, which is a small village of some 500 inhabitants. One-half of the members of the local lodge resided in the village, and the other half in the adjoining farming district. The financier of this local lodge was employed in the bank, situate where the two principal streets of the village intersect, and the saloon in which the insured worked was less than a block away on one of these streets. It was admitted that the financier would testify that he did not know that the insured was so employed till after his death; but we cannot say that the trial court was bound to accept this as true, in view of the situation and other evidence in the case. The master workman of the local lodge was in the saloon, and saw that the insured worked therein about two weeks prior to his death, but did not suggest to him that his membership in the order was annulled or imperiled by the employment.

One duty of the master workman of the local lodge is to "take care that all beneficiary funds, the per capita tax, and all claims of the grand lodge upon the said subordinate lodge are forwarded, as required by the provisions of this constitution, or paid promptly, as the case may be." The financier is required to collect all assessments and dues, and keep accurate account with each individual member, report to the lodge, and pay these over to the receiver. If, then, the master workman performed his duty in taking care that all

assessments were promptly forwarded or paid, there was room for the trial court to find that this September assessment, paid by the insured while employed as temporary bartender, was accepted and retained with knowledge of the true facts on the part of the master workman. We think that the master workman and financier of the local lodge act in respect to the receipt, retention, and forwarding of assessments, as the agent of the defendant, and, in the absence of fraud, their knowledge and conduct in regard to a waiver of forfeiture may properly bind the defendant; the provision in its constitution and by-law to the contrary notwithstanding.

In addition, another circumstance supports the finding of waiver. It appears that in each local lodge there is an officer known as "District Deputy Grand Master Workman," appointed by the master workman of the grand lodge from among those members in the local lodge who have attained the rank of past master workman. This officer shall be, as far as his authority extends, a representative of the grand master workman in the local lodge. He "shall promptly report to the grand master workman any violation of their duties by the officers" of the local lodge, or any illegal action by the lodge itself. This district deputy grand master of the local lodge well knew the insured, who worked for him prior to the employment in the saloon, and knew that he was so engaged temporarily while the regular bartender was out threshing. This officer did not discuss the bearing the insured's employment had upon his membership, because it was so short and temporary that he considered it had no effect thereon. Failure of these officials, representing the defendant, to appreciate that a forfeiture of insured's membership had occurred, if it ever did, when the assessment was accepted and retained, would none the less constitute waiver, if he knew the true facts. Their misapprehension of the legal result would not prevent their acts, with full knowledge of the actual situation, from constituting a waiver, if otherwise such were the consequences.

The court also found a waiver in that, after knowledge of the facts constituting the alleged forfeiture, defendant required additional proof of death at expense and trouble to plaintiff. Defendant contends that this finding is unsupported by the evidence. The facts

appear to be these: After the death of the insured, she requested the financier of the local lodge to assist her. He had blank proofs of death provided by defendant. Plaintiff gave the necessary information for him to fill in the answers to the questions found in the blank proofs of death; then she signed and swore to the same before him. One of the questions requiring an answer was whether the insured had at any time been engaged in the sale by retail of intoxicating liquor as a beverage, and other enumerated employments, and, if so, when? The answer was, "Engaged in retail liquor for several weeks as assistent bartender." As a part of this proof of death the master workman, the financier, and recorder also appended a certificate as to the insured's age, standing in the order, illness, death, funeral, and other details, stating therein that: "His occupation when taken sick, or when last engaged, was assistant bartender several weeks." Although this certificate by the principal officers of the local lodge fully covered the place of death, and burial attended by 18 members of the lodge, the grand recorder, on receipt of these proofs, wrote plaintiff that it appears therefrom "that the deceased was engaged in the retail liquor traffic for several weeks as assistant bartender. Kindly fill in the dates when he engaged, and if he was engaged in the liquor traffic at the time of his death. * * * There is no proof as to where the deceased was buried." Plaintiff thereupon obtained proof from the undertaker at some trouble and expense of 25 cents, and also gave information by letter as to the time the insured was working in the saloon.

The contention of defendant is reasonable that, where an answer called for by a question in a proof of loss or death is indefinite, so that it is left in doubt whether the contract under which a claim is made is forfeited or not, the insurer, by calling for additional and definite proof in that respect, does not in any sense waive a forfeiture. And if the proof furnished had contained only plaintiff's answer touching the insured's occupation, or if the additional proof called for had related to that feature alone, we should hold unhesitatingly that no waiver followed a demand and compliance therewith. But here the certificate of the officers of the lodge, a part of the proof, clearly showed that, if the employment of the insured did forfeit

the insurance, it had taken place. In that situation the grand recorder, not only called for more detail upon this subject, but also requested proof as to burial. While it is true that the grand recorder does not pass on the proof, or the right of the beneficiary to the insurance, he is nevertheless the agent of defendant in receiving proofs, and it is undoubtedly understood that he acts within the scope of his duties, and therefore in behalf of the Grand Lodge when requesting additional proof.

Although the law abhors forfeitures, and is eager to lay hold of a reason to avoid so declaring, we confess to a reluctance in holding that, after loss, an insignificant outlay and effort imposed by the insurer upon the beneficiary is a waiver of the forfeiture. But if it be imposed with knowledge of the facts establishing the forfeiture, the conduct is inconsistent with any other position than a waiver, and a recognition of the subsistence of the contract, and such waiver becomes binding when the beneficiary complies with the condition imposed. We cannot say that there is no evidence to sustain the finding that, by calling for and obtaining the additional proof of burial after full knowledge that the forfeiture now claimed existed, the defendant has waived such forfeiture.

The judgment must be affirmed.