## SARAH KASSMIR v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

April 13, 1934.

No. 29,723.

[1]Reported in 254 N. W. 446.

*Shearer, Byard & Trogner,* for appellant.

*Harry E. Weinberg* and *Lewis, Hunt & Palmer,* for respondent.

*JULIUS J. OLSON, Justice.*

Action upon a policy of life insurance issued by defendant company upon the life of Markos Z. Kassmir March 20, 1925, plaintiff, wife of the insured, being the beneficiary. A trial was had and verdict rendered for plaintiff, and the matter is here for review upon defendant's appeal from an order of the court below denying its motion for judgment notwithstanding the verdict or a new trial.

The policy contains certain disability provisions which, if the same became effective, would require defendant to waive future premiums. The premiums were payable semiannually, March and September 20. The insured paid four such premiums, the last of which was due September 20, 1926. The policy provides for no reserve, cash value, or other benefits by way of extended insurance in case of failure to pay premiums until the end of the third policy year. The premium due March 20, 1927, was not paid. After the grace period of 31 days had expired the matter was reported by the Minneapolis branch office to the home office upon a form used by the company

in such cases. The home office canceled the policy by appropriate entries upon its records on May 2, 1927.

In August, 1925, the insured, became ill, and he and his wife went to California for his health. They remained there until December, when they were called back home to Duluth by the death of their son. The assured's health had not improved, and thereafter he was cared for at the Duluth Clinic. He was suffering with jaundice and had difficulty in breathing. He did not again actively attend to his practice, that of osteopathy. He was at the Mayo Clinic at Rochester in February and March, 1926, some four or five weeks and returned home unimproved. In September, 1926, having sold his practice at Duluth, he again went to California with his wife. He then had hemorrhages and difficulty in breathing. While in California he tried various treatments and became interested in the use and sale of electric belts. It also appears that he became interested with one Plame, who induced him to render financial assistance in the opening of an office in Chicago for the sale of certain electric belts. This effort proved a financial loss. It also appears that Plame, having exhausted the insured's financial reserves, deserted him. There is evidence from which the jury could well find that since January, 1926, the insured was unable to do any substantial work, either in his professional endeavor or otherwise. He died in California May 29, 1931.

The policy here involved was issued through the agency of one Morris Mann. At his suggestion the insured, after returning from Rochester, was told that he need not worry about any more premium payments, that these had been taken care of. There was other evidence in the case upon this phase in respect of notice to the company while there was no default in policy premium payments, but all this testimony was stricken by the trial court because of lack of authority on the part of Mr. Mann to receive such information or notice so as to bind the company; hence hereafter no further notice will be taken of this feature.

Defendant has assigned 31 errors, which are grouped in its brief as follows:

(1)   That the doctrines of waiver and estoppel have no application to the facts in this case.

(2)   That the respondent was not the proper party in interest and that a certain amendment to defendant's answer should have been allowed by the trial court.

(3)   That the verdict is not supported by the evidence.

(4)   Certain assignments of error, separately considered.

■   It is claimed by defendant that the policy lapsed and that it was properly canceled.   It is important here to refer to the policy provisions in certain respects.

"If the insured shall become totally and permanently disabled * * * at any time after the payment of the first premium on this policy, while this policy is in full force and effect and the insured is less than 60 years of age, and before any nonforfeiture provision shall become operative, the company, upon receipt of due proof of such disability, will grant the following benefits:

"(1)   WAIVER OF PREMIUMS.—The company will waive the payment of any premium or premiums the due date of which, as specified on the first page hereof, shall occur after receipt by the company of said proof of such disability."

It will thus be observed that the defendant was, under its contract, obligated to carry the insurance risk under two alternatives: (1) Payment of premiums, or (2) if the insured became totally and permanently disabled after the first premium had been paid and while the policy was in force, the insured being less than 60 years of age, before any nonforfeiture provision had become operative, and if due proof of disability was received by the defendant. It is conceded that the first alternative was not performed after the September, 1926, payment.   The jury had a right to find that the only thing that there was failure on the part of the insured to do was failure to give due notice of proof of disability within the time limit provided by the policy.   With this exception, the policy provisions were complied with.   So it must be conceded that the only question here for review, at least as to this phase of the case, is whether or not the evidence justified the court in submitting to the

jury for its finding and determination that the defendant waived the policy provisions in respect of the giving of notice and furnishing proof of disability.

Defendant earnestly contends that the acts which occurred after the so-called lapse of the policy do not permit waiver or estoppel to enter into the situation. It claims that waiver as applied in a case of this nature would virtually require the making of a new contract; hence it is argued that the evidence in this case does not justify a finding that there was any consideration for the making of a new contract or a resurrection of the old. The court adopted defendant's view in respect of the cancelation of the policy because of failure to give the required notice and proof of disability but submitted to the jury the questions of whether waiver or estoppel, or both, existed so as to give life to the waiver provision hereinbefore quoted.

Vance, Insurance (2 ed), under "Waivers requiring consideration," p. 482, has this to say: "In our law a voluntary relinquishment of a right or an immunity has no binding effect." In support thereof a number of decisions are cited under note 46, page 466, and among the cases cited are Bowman v. Surety Fund L. Ins. Co. 149 Minn. 118, 182 N. W. 991, and Hendrickson v. Grand Lodge, 120 Minn. 36, 138 N. W. 946. On page 483, under "Waivers requiring no consideration," the author states:

"On the other hand, it is equally clear that the waiver of a condition affecting the acceptance of an offer, if made by the offerer who imposed it, needs no consideration, since the only question involved is the intention of the parties to be bound. Neither does waiver by election, nor waiver by denial of liability, even though in such case a consideration of detriment is usually present."

In Bowman v. Surety Fund L. Ins. Co. 149 Minn. 118, 182 N. W. 991, 992, there was a provision in the policy to the effect that the policy was to be void if the insured should engage in army or naval service in time of war. He was killed in action in France while the policy was in full force and effect, excepting of course that the provision in respect of war service would exonerate the insurer from

liability. The beneficiary in that case, immediately upon receipt of notice of death of the insured from the war department, wrote the company and inclosed a copy of the message so received. Upon receipt thereof the company wrote [149 Minn. 120]:

"We are transmitting herewith blank for use in rendering legal notice of the death of a policyholder in this company. Be kind and answer the questions therein contained and return the notice to us at your earliest convenience. In closing permit us to extend to you our sympathy in your bereavement."

Pursuant to that letter the beneficiary submitted the required proof. Shortly thereafter the insurer denied liability upon the ground that the insured was killed in action while engaged in military service. Upon appeal, after verdict for plaintiff, this court said [149 Minn. 121]:

"The defendant, with knowledge that the insured had died in military service, might choose to waive the provision for a forfeiture. The language of its letters justified a finding that such was its intent. It asked for proofs. The plaintiff furnished them and in doing so was put to some trouble," citing Mee v. Bankers L. Assn. 69 Minn. 210, 217, 72 N. W. 74, and quoting with approval therefrom the following:

"A waiver may be created by acts, conduct or declarations insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations which recognize and treat the policy as still in force, *or induces the assured to incur trouble or expense,* it will be regarded as having waived the right to claim a forfeiture."

It is appropriate here to note that the result in Bowman v. Surety Fund L. Ins. Co. 149 Minn. 118, 182 N. W. 991, was reached only because the court was able to construe the involved policy "as not excepting a risk resulting from the insured entering military service." The view taken was that the condition concerning military service [149 Minn. 121], "was no more than the condition usual in policies relative to a change of occupation and was the subject of

waiver." Hence that case cannot properly be treated as one holding that a risk never covered by insurance can be brought within its scope through waiver or estoppel.

In the instant case the risk for which recovery is had was covered. The only thing waived was notice or proof of the disability. Such notice or proof is not a condition precedent to liability. It is rather and only prerequisite to the right to sue. Hence it is the subject of waiver or estoppel.

The case of Hendrickson v. Grand Lodge, 120 Minn. 36, 138 N. W. 946, is likewise referred to as sustaining the conclusion reached by this court.

In the instant case it appears that the plaintiff entered into negotiations with defendant in the latter part of the year 1931 through its Los Angeles office. In a letter written to its agent and communicated to and acted upon by plaintiff, defendant states:

"We will be able to give consideration to a disability claim under the policy, only in the event definite and conclusive proof can be presented at this office, showing the insured to have become totally and permanently disabled, to such an extent he would never again be able to engage in any gainful work, at a date prior to the lapsing of the policy, or before March 20, 1927. We note from your letter that you have been informed that the insured first became disabled in September 1925, and that this disability reached the total and permanent stage in January 1926, and continued steadily thereafter until the insured died on May 29, 1931. *If these facts can be substantiated, we will gladly give the consideration to a claim.* * * * We ask that you kindly communicate with the persons interested in this matter, *and point out to them the conditions under which a claim may be filed, under this policy.* They should be informed that it is incumbent upon them to furnish us with definite and conclusive medical proof covering the entire period of the insured's alleged total disability to the date of his death on May 29, 1931. * * * If, after such an interview, you are *satisfied that a claim can properly be entered,* you will kindly furnish the interested with form 7110, to be completed by them, and with sufficient forms 7111, to be completed by any and all physicians who attended the insured at any time

during all period of alleged total disability, and also by authorities at any hospital, in which the insured was confined, in connection with his disability. *Upon receipt of this evidence,* properly completed, *we will gladly give consideration to the claim,* and advise you as to our action, as soon as a decision has been rendered."

Later, on March 11, 1932, this language appears in one of the company's letters:

"We wish to impress upon you at this time that although the disability benefits become available only in the event the insured becomes totally and permanently disabled while this policy is in full force and effect, and it is only by a concession of the company that we are giving consideration to this claim."

On April 5, 1932, the company in its letter states that it has been conducting an investigation and has come to the conclusion that the insured was not totally and permanently disabled prior to the policy lapse. Again, on April 20, it reiterates that particular claim and makes its position clear in this language: *"The question at issue is whether the insured was able to work, and whether he WORKED."* During the entire course of the negotiations referred to it is obvious that the defendant held out to plaintiff that the real question involved was not lack of notice of disability within the policy limitations, but rather whether or not the insured had become totally and permanently disabled while the policy was in force and remained in that condition until his death; at least the evidence amply sustains the finding of the jury to that effect.

By virtue of these representations so made and communicated to plaintiff, she went to a great deal of trouble and considerable expense in respect of furnishing the required proofs. She remained some five months in the state of California beyond the time that she had contemplated staying there. The proofs were from sources far apart and involved a great deal of trouble in the preparation thereof. It seems to us that it cannot be seriously urged that plaintiff did not rely upon the representations made by the defendant in this regard and that in doing so there was detriment to her. Defendant claims that what plaintiff undertook to do was at the

invitation of the company to secure its "consideration to a claim," but it seems to us that this is hardly a fair characterization of the situation. At any rate it presented a fact question and as such has been determined adversely to defendant's position. The company had an adequate and absolute defense in respect of failure to furnish proof. It chose to enter into negotiations with plaintiff long after the alleged lapse had taken place. By virtue thereof plaintiff went to trouble, expense, and inconvenience in procuring proofs required by the company, and it seems to us that the whole thing was thereby made a fact question, and as such the doctrine of waiver, under the decisions of this court, was properly submitted.

Many cases decided by this and other courts hold that failure to furnish proof of loss within the time fixed by the contract of insurance may be waived by the insurer. Thus in Johnson v. Bankers Mut. Cas. Ins. Co. 129 Minn. 18, 24, 151 N. W. 413, 415, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154, where the policy provided that "no claim shall be valid unless written notice thereof shall be given the company * * * within twenty days from the date of death * * * unless such notice may be shown not to have been reasonably possible," and where it appeared that notice was not so given, it was held:

"This failure to give notice of claim within the time prescribed in the policy is now asserted as a defense. There are several reasons why this defense is not available. We need mention but one. On July 21 defendant replied to the notice given denying liability on the policy on the express ground that 'the right which we have of holding an autopsy in case of death was denied us on June 18th.' The denial of all liability on this ground alone was a waiver of the objection that notice was not given in time." (Citing cases.)

In Rice v. Fidelity & Deposit Co. 43 C. C. A. 270, 278, 103 F. 427, 435, Judge Sanborn said:

"But a waiver is either the result of an intentional relinquishment of a known right, or an estoppel from enforcing it. To constitute a waiver, there must be an intention to relinquish the right, or there must be words or acts calculated to induce the other contracting

party to believe, and which deceive him into the belief, that the holder of the right has abandoned it; and the party deceived must have acted on his belief, so that an assertion of the right will inflict upon him a loss he would not have sustained if its holder had not appeared to relinquish it."

Vance, Insurance (2 ed.) pp. 462-463, uses this illustration: Where the insured held a policy of insurance containing the anti-military clause and enlisted without consent of insurer but was shortly thereafter discharged while in good health, and where a letter was written to him by the insurer stating that the company would be glad to reinstate the policy, but the insured died before paying another premium or doing any other act in reliance upon the letter of reinstatement, it was held that the insurer extinguished its privilege to set up the breach of condition. Again, quoting Vance, Insurance (2 ed.) 467:

"M, having an existing policy containing the anti-military condition, informs the agent of his desire to enlist and asks a waiver of the condition. The agent replies: 'Certainly. We will not enforce that condition. It is waived.' Acting on such promise, M enlists.

"Here again we have an agreement made upon adequate consideration, being a promise for an act impliedly requested, operating to modify the existing written agreement. There is no reason whatever why a written policy contract shall not be subsequently modified by parol agreement. The courts uniformly admit evidence of such subsequent parol 'waivers.' "

3 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 4686a, 4789, and cases cited.

Further quotation of authorities is not deemed necessary. We believe the doctrines of waiver and estoppel as submitted to the jury proper.

■ After plaintiff had rested her case defendant asked leave of court to amend its answer by adding: "That the plaintiff is not the proper person or entitled to bring this action, it [she] is not vested with any right under or by virtue of said policy of insurance."

Explaining to the court its reasons for the proposed amendment, counsel stated that he wished to prove that in 1928 the insured had failed to schedule this policy as an asset or claim it as exempt although he had scheduled and claimed exemption as to another policy in the sum of $5,000. It was asserted and urged that some creditor of the insured "may apply to reopen this estate and have this policy or this right or whatever value there is there administered for the benefit of the creditors, if the bankruptcy proceeding should be reopened." Upon plaintiff's objection the proposed amendment was not allowed, the court remarking: The allegation that is offered by way of amendment if proven would not be a defense to plaintiff's cause of action."

The court was right. 1 Mason Minn. St. 1927, §§ 3387, 3388, provides:

"Whenever any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person effecting the same. All premiums paid for insurance in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, if the company be specifically notified thereof in writing before payment.

"Every policy made payable to, or for the benefit of, the wife of the insured, or after its issue assigned to or in trust for her, shall inure to her separate use and that of her children, subject to the provisions of § 3387."

These sections were construed and upheld in Murphy v. Casey, 150 Minn. 107, 184 N. W. 783. See also In re Johnson (D. C.) 176 F. 591, and Ralph v. Cox (C. C. A.) 1 F. (2d) 435.

■ It is next contended by defendant that the verdict is not supported by the evidence. The claim is made under this subdivision that the waiver, if such there was, was a conditional one requiring (1) that clear and conclusive medical proof of a total and permanent disability be furnished showing such disability to have commenced prior to the lapse of the policy and to have continued until the death of the insured, and (2) that the ability to perform *any* work, or the actual performance of *any* work by the insured, after

the lapse of the policy would negative the existence of such total and permanent disability.

The objection raised is met by the submission of this very issue to the jury as follows:

"In arriving at your verdict in this case the two principal questions of fact for your determination are: first, whether Markos Z. Kassmir prior to April 19, 1927, became totally and permanently disabled, either physically or mentally, to such an extent that he was rendered wholly, continuously, and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his life; and secondly, whether defendant waived due proof of such disability.

"If you shall find that the company waived the provision of the policy making its obligation to pay disability benefits and waive payment of future premiums conditional upon due proof of the kind of disability provided in the policy being furnished to the company prior to any lapse or forfeiture of the policy, * * * the company had the right to impose such conditions upon the waiver as it saw fit, and if you find that it did impose conditions upon its waiver and those conditions have not been met and satisfied by a preponderance of the evidence, then your verdict will be for the defendant."

That the evidence adduced made this a fact question is beyond serious question. The record indicates, if it does not establish, that it was not plaintiff's lack of proof furnished in respect of the insured's disability that led it to deny liability, but rather its own "independent investigation" thereof. Of course, if the insured had become disabled after the policy lapsed for failure to pay premiums, the situation would be entirely different. But here the jury found upon adequate proof that his disability began while the policy was admittedly in full force and continued until his death. In addition to the cases cited under the first subdivision hereof bearing upon this question, the following are helpful: Kearns v. North American L. & C. Co. 150 Minn. 486, 185 N. W. 659; Jones v. Fidelity & C. Co. 166 Minn. 100, 207 N. W. 179; Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737.

■ Error is claimed in respect of the introduction of section 83B of the "Manual of Instructions" issued by defendant in its "Industrial Department" as a guide to its agents. The only part admitted reads as follows:

"Claim blanks must not be furnished unless the policy is in force. Whenever doubt exists, the Ordinary Claim Department should be requested to furnish the status of the policy."

It will be observed that the instruction just quoted harmonizes with the requirements of the company in writing its Los Angeles agent, hereinbefore quoted, to the effect that "if, after such an interview, you are satisfied that a claim can properly be entered, you will kindly furnish" the desired forms of proof. The objection was to the foundation laid to the introduction of the exhibit. In view of the fact that the witness had previously testified that he was familiar with the instructions given to him by defendant while he worked for it as its agent in the "Ordinary Life" business and that the instructions to its agents engaged in "Intermediate and Industrial" business were only slightly different, the difference being clearly pointed out by the witness and the quoted language being what he claimed was the applicable instruction, it is not apparent that there was lack of foundation. No testimony was offered by defendant to contradict what had been testified to by the witness. If the witness was mistaken, it would have been a simple matter for defendant to so show. The evidence admitted related to one of its own publications. The modern tendency is to admit evidence freely. The trial court has wide discretion. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 3251.

The next objection (for lack of foundation) relates to a letter or statement by Dr. Eusterman of the Mayo Clinic. This was a part of plaintiff's proofs sent to defendant in compliance with the correspondence had through the Los Angeles office. In form it differed from the formal statements (upon blanks furnished by the company) made by other doctors who had treated the insured, but in substance it was the same. The objection was general, "incompetent, irrelevant, and immaterial." This objection "does not involve

the point that preliminary proof of its execution had not been made." McDonald v. Peacock, 37 Minn. 512, 35 N. W. 370; Thompson v. Ellenz, 58 Minn. 301, 59 N. W. 1023; London & N. W. A. M. Co. v. St. Paul P. I. Co. 84 Minn. 144, 149, 86 N. W. 872.

Lastly, criticism is made respecting the closing arguments of counsel for plaintiff. The witness Plame, called by defendant, had testified that the insured was a "stocky, robust man," "in the best of health," and had the appearance of "the perfectly healthy man," "in the peak of health," etc. He was put through a thorough cross-examination by plaintiff's counsel, as well he might be. As might be expected, this testimony and the witness himself came in for severe comment when counsel made his closing argument. An examination of the record does not disclose that there was anything said by counsel not justified by the obvious partisanship of the witness. Counsel has the undoubted right to "call things by their true name when the record supports it." Burmeister v. Minneapolis St. Ry. Co. 185 Minn. 167, 168, 240 N. W. 359, 360. Defendant made no objection during the argument nor request for an instruction to the jury on this point. No effort was made to correct the error, if error there was.

The case was fairly and ably tried by skilled and capable counsel. The record is remarkably free from objectionable or extraneous matters. The charge of the court was fair, lucid, and complete. The verdict has the approval of an able and experienced trial judge. We find no error.

Order affirmed.