In the Matter of **ULTRAFLEX ENTER-PRISES' APPEAL FROM DECERTIFICATION IN the MINNESOTA SMALL BUSINESS PROCUREMENT PROGRAM.**

No. C8–92–1970.

Court of Appeals of Minnesota.

March 16, 1993.

Patricia M. Siebert, Pamela S. Hoopes, Kevin P. Staunton, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for relator Ultraflex Enterprises.

Hubert H. Humphrey, III, Atty. Gen., Amy V. Kvalseth, Sp. Asst. Atty. Gen., St. Paul, for respondents State of Minnesota and Dana B. Badgerow, Commissioner of the Minnesota Department of Admin.

Considered and decided by KLAPHAKE, P.J., and SCHUMACHER and STONE, JJ.

## OPINION

### BRUCE C. STONE,* Acting Judge.

Relator Ultraflex Enterprises, by its president James F. Maher, seeks review by certiorari of a decision issued by the respondent Commissioner of Administration ("Commissioner"). The Commissioner upheld the revocation of Ultraflex's participation in Minnesota's small business procurement program. We affirm.

### FACTS

James Maher is the founder and president of relator Ultraflex Enterprises, a sole proprietorship that is in the business of providing contract word processing, transcription, and family history services. Maher suffers from a chronic mental disability, manifested by recurrent depression and difficulty working in a structured environment. He has been under the care of a psychiatrist, and has been prescribed psychotropic medication.

In October 1991, the Commissioner certified Ultraflex as a "targeted group business" for purposes of participation in Minnesota's small business procurement program. See Minn.Stat. § 16B.19, subds. 2a, 2b (1990). That program was developed in an attempt to ensure that the State of Minnesota purchases a certain percentage of goods and services from members of targeted groups, including businesses owned and operated by women, minorities, and persons with disabilities. Id.

In April 1992, the legislature amended the small business procurement act, redefining targeted groups to include those businesses that are "majority owned and operated by women, persons with a substantial physical disability, or specific minorities." Minn.Stat. § 16B.19, subd. 2b (1992). In June 1992, the Department of Administration ("Department") notified Maher that, as a result of the statutory amendment, Ultraflex was no longer qualified for the program because Maher's disability was not physical. The Department's letter notified Maher that he could appeal to the Commissioner, who would refer his appeal to the Small Business Procurement Advisory Council ("Council").

In July 1992, Maher appealed the Department's decision to the Commissioner, claiming that the amended definition of targeted groups discriminated against him on the basis of his disability. In the alternative, Maher claimed that his disability should be considered "physical."

In August 1992, the Commissioner wrote Maher and stated that the Council would consider his appeal at its regularly-scheduled meeting in August. Maher did not attend the meeting. Following deliberation, the Council recommended that the Commissioner deny Maher's appeal and uphold the revocation of Ultraflex's certification. The Commissioner adopted the Council's recommendation and upheld the revocation of Ultraflex's certification in the small business procurement program.

### ISSUES [1]

1. Does the small business procurement program violate state and/or federal equal protection guarantees?

2. Was the revocation of Ultraflex's certification based upon unlawful procedure?

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. At oral argument, respondents' motion to strike portions of the record was abandoned. Accordingly, we need not address that issue in this opinion.

## ANALYSIS

### I.

Maher claims the small business procurement act, as amended in 1992, discriminates against persons with mental, as opposed to physical, disabilities. Accordingly, Maher argues he has been denied equal protection under the state and federal constitutions, Minn. Const. art. I, § 2 and U.S. Const. amend. XIV, § 1.

■ Statutes are presumed constitutional, and an individual who challenges a statute has the burden of proving beyond a reasonable doubt that the statute is unconstitutional. *Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn. 1980).

■ The equal protection clauses of the United States Constitution and the Minnesota Constitution require that all persons in similar circumstances must be treated alike. *In re Estate of Turner*, 391 N.W.2d 767, 769 (Minn.1986). Where challenged legislation does not involve a suspect class or fundamental right, the "rational basis" test, rather than the "strict scrutiny" test, is applicable. *Id.* Both parties to this appeal concede that Maher is not a member of a suspect class; therefore, the rational basis test is applicable when determining whether the small business procurement program is unconstitutional.

■ The federal rational basis test requires: (1) that there be a legitimate purpose for the challenged legislation; and (2) that the legislature could have reasonably believed that use of the challenged classification would promote that purpose. *Western & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981). The Minnesota rational basis test requires a legitimate purpose for the challenged legislation; a connection between the distinctive needs of the class and the statutory remedy; and a genuine and substantial distinction between those inside and outside the class. *Guilliams*, 299 N.W.2d at 142.

■ The small business procurement act does not fail either the federal or the Minnesota rational basis test. The stated purpose of the act is "to remedy the effects of past discrimination against members of targeted groups." Minn.Stat. § 16B.19, subd. 2a. Maher admits that purpose is legitimate. The legislature could have reasonably believed that preferential treatment of targeted businesses would promote the statute's purpose, by ensuring that discrimination against those businesses does not continue. There is also a connection between the distinctive needs of the targeted groups (i.e., the need to remedy past discrimination) and the prescribed remedy (i.e., preferred treatment to ensure that such discrimination does not continue).

Maher argues that there is a lack of a genuine and substantial distinction between those persons who have physical disabilities and those persons who have mental disabilities. We disagree.

In *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989), the Supreme Court struck down a city's program that required city construction contractors to subcontract a percentage of each contract to one or more minority business enterprises. The *Croson* court concluded that the city's program was unconstitutional because it was based solely upon race and failed the strict scrutiny standard of review. The *Croson* court noted, however:

> If the city of Richmond had evidence before it that non-minority contractors were systematically excluding minority businesses from subcontracting opportunities it could take action to end the discriminatory exclusion. Where there is a significant statistical disparity between the number of qualified minority contractors willing and able to perform a particular service and the number of such contractors actually engaged by the locality or the locality's prime contractors, an inference of discriminatory exclusion could arise.

*Id.*, 109 S.Ct. at 729.

In 1989, the Minnesota Legislature established a commission to ensure that Minnesota's small business procurement program conformed to the United States Supreme

Court's decision in *Croson.* *See* 1989 Minn. Laws ch. 352, § 22. As a result of the commission's study, the Minnesota Legislature amended the small business procurement act to specifically designate targeted groups as those majority owned and operated by "women, persons with a substantial physical disability, or specific minorities." Minn.Stat. § 16B.19, subd. 2b (1992).[2]

The small business procurement program is intended to remedy past discrimination against businesses that are majority owned and operated by members of targeted groups. Minn.Stat. § 16B.19, subd. 2a. Specific evidence before the legislature demonstrated past discrimination against businesses that are owned and operated by the targeted groups named in the act, including businesses that are majority owned and operated by persons with substantial physical disabilities. On the other hand, there was apparently no evidence before the legislature of past discrimination against businesses that are majority owned and operated by mentally disabled individuals. Accordingly, the legislature had a genuine and substantial basis for failing to include businesses that are majority owned and operated by mentally disabled persons within the targeted group provision. *See State ex rel. Humphrey v. Ri–Mel, Inc.,* 417 N.W.2d 102, 107 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 17, 1988) (legislative distinction between for-profit and nonprofit health clubs was constitutional where there was "no showing that the harms sought to be protected against by the Act ha[d] occurred in nonprofit organizations").

Maher argues that, historically, persons with mental disabilities, as well as physical disabilities, have been subjected to discrimination. Maher cites the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–.15 (1990) and the Americans with Disabilities Act, 42

U.S.C.A. §§ 12101–12213 (West Supp.1992), which were enacted to remedy past discrimination against groups including the mentally disabled. Those statutes suggest that historically, mentally disabled individuals have been subjected to discrimination. Maher, however, has not pointed to any specific evidence that, historically, mentally disabled individuals have been subjected to discrimination in their capacity as majority owner-operators of businesses.

When adopting remedial legislation, the legislature need not necessarily address all evils at once; "a legislature 'may implement [its] program step by step, * * * adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.'" *State v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) (quoting *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)), *reh'g denied,* 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981).

> If the law presumably strikes at the evil which the legislature proposes to eradicate, it is not to be overthrown because there are other instances to which it might have been applied.

*State v. Pehrson,* 205 Minn. 573, 577, 287 N.W. 313, 315 (1939).

> The fact that measures taken are not directed at all of the evils to be corrected does not invalidate the application of the statute if the problem is dealt with according to practical exigencies and experience in a manner which is germane to its solution.

*Fabio v. City of St. Paul,* 267 Minn. 273, 277, 126 N.W.2d 259, 262 (1964).

In the present case, the legislature had before it evidence of discrimination against certain targeted groups. In reliance upon that evidence, the legislature enacted the small business procurement program in an

---

**2.** Initially, the amendment defined targeted groups as including those businesses that are majority owned and operated by persons with a disability. Minn.Stat. § 16B.19, subd. 2b (1990). The Department interpreted the term "disability" as including mental, as well as physical, disabilities. Minn.R. 1230.0150, subpt. 24,

item C (Supp.1992). However, in 1992, the legislature amended the language, limiting targeted groups as including persons with a "substantial physical disability." 1992 Minn. Laws ch. 514, § 4. There is no evidence that this amendment was other than a housekeeping measure, to clarify the legislature's intent in 1990.

effort to remedy that past discrimination. Absent similar evidence of discrimination against businesses owned and operated by persons with mental disabilities, the legislature's enactment did not result in a violation of those individuals' rights to equal protection.

## II.

■ Maher claims that the Commissioner's decision was based upon unlawful procedure because Maher was not offered or granted a formal hearing. Maher argues that, under both the state and federal constitutions, the government's revocation of a license ordinarily entitles a former licenseholder to a hearing. In addition, Maher cites the Department's own rules, which authorize a hearing under certain circumstances when a business is removed from certification. *See* Minn.R. 1230.1850, subpt. 4 (Supp.1992).

Upon Maher's appeal of the revocation of Ultraflex's certification, the Commissioner did not request that Maher choose either a formal or informal review, as required by Minn.R. 1230.1850, subpt. 4. Instead, the Commissioner wrote Maher and stated that his appeal would be referred to the Small Business Procurement Advisory Council for deliberation at its regularly-scheduled meeting in August. Although Maher had requested an extension of his appeal, he was aware that the Council would be considering his appeal, and he did not attend the August meeting.

The Commissioner argues that Maher was not entitled to a contested case hearing under Minn.R. 1230.1850, subpt. 4, because there were no facts in dispute. In his letter of appeal, however, Maher indicated that he was contesting the Department's determination that he did not have a "physical" disability. The Commissioner responds that this is not a factual issue because both the Minnesota Human Rights Act and the Americans with Disabilities Act distinguish between mental and physical disabilities, and because federal regulations separately define mental and physical disorders. *See* Minn.Stat. § 363.01, subd. 13 (1990); 29 C.F.R. § 1630.2(h) (1992). Ar-

guably, however, the question whether an individual's disability is "physical" may involve questions of fact requiring a contested case hearing. *See Kassmir v. Prudential Ins. Co.,* 191 Minn. 340, 351, 254 N.W. 446, 451 (Minn.1934) (jury question of fact whether individual was totally and permanently disabled, either physically or mentally); *Miller v. Miller,* 469 N.W.2d 483, 488 (Minn.App.1991), *pet. for rev. denied* (Minn. July 31, 1991) (factual inquiry whether individual was permanently physically or mentally disabled).

Maher has consistently challenged the Department's belief that his disability is not physical. It is Maher's position that where there is a physical cause for a mental disability, the disability should be considered physical and included within the small business procurement program. At oral argument, however, Maher's counsel admitted with commendable candor that there was no physical act that Maher could not perform by reason of his mental condition. In addition, in a letter to the Department, Maher characterized his disability as "psychiatric." Maher's psychiatrist submitted a letter stating that Maher has a "chronic mental disorder." Thus, even if we were to remand for a contested case hearing, there would be nothing to determine; the undisputed evidence indicates that Maher's problem is mental, not physical.

## DECISION

The legislature's failure to include persons with mental disabilities as a targeted group for purposes of Minnesota's small business procurement act does not violate the equal protection clause of the United States or Minnesota Constitutions. Remand for a contested case hearing is unnecessary because the undisputed evidence indicates that Maher has a mental, rather than a physical, disability.

Affirmed.